UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| DAVID SULLIVAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) 3:22-CV-00392-DCLC-JEM |
| v. | ) |
| | ) |
| METRO KNOXVILLE HMA, LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs sued their former employer Metro Knoxville HMA, LLC ("Tennova") after it terminated them in a reduction in force, alleging Tennova discriminated against them based on their ages in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1). Tennova moved for summary judgment, [Doc. 29], which is fully briefed and ripe for resolution. For the reasons stated below, Tennova's motion [Doc. 29] is **GRANTED**.

**I.   BACKGROUND**

Sometime before November 2020, Community Health Systems, Inc. ("CHS") acquired Tennova and decided to update Tennova's IT systems for its five hospitals in East Tennessee [Doc. 33, ¶¶ 1, 5]. The new platform was called Cerner, and it operated on the "US Domain" [Doc. 33, ¶ 1]. Switching to Cerner and the US Domain would allow Tennova's IT department to use more of CHS's resources, reducing the need for local support in Tennessee [Doc. 33, ¶¶ 12–13]. Less local support meant reduced need for staff, so CHS planned to implement a reduction in force [Doc. 33, ¶ 21].

On November 1, 2020, CHS transferred Kevin Myers ("Myers") to East Tennessee to implement Cerner and the anticipated reduction in force ("RIF") [Doc. 33, ¶¶ 1, 20–21].

1

Tennova's IT employees were concentrated in an entity called "8515," which included help desk, deskside, systems support, and clinical informatics employees [Doc. 33, ¶¶ 27–29]. Plaintiff Charles Cummins ("Cummins"), 68, was a help desk employee, [Doc. 33, ¶¶ 17, 64]. Plaintiff Darlene Robertson ("Robertson"), 69, was a "network admin" [Doc. 33, ¶¶ 18, 64]. And Plaintiff David Sullivan ("Sullivan"), 68, was a deskside employee [Doc. 33, ¶¶ 14, 64].

Myers worked with each of the Plaintiffs a number of times [Doc. 29-2, pgs. 16–18]. Myers recalled an incident where Sullivan was unable to solve a technical issue, and as a result, the director of surgery at North Knoxville Medical Center informed Myers she was not able to do surgery that day [Doc. 29-2, pg. 48]. Myers believed Sullivan struggled with the transition to Cerner and with providing the technical support Tennova needed [Doc. 33, ¶ 57]. At some point, Robertson "miss[ed] a backup report" [Doc. 33, ¶ 46], showing that several of Tennova's server back-ups were failing [Doc. 33, ¶ 44]. She did not respond to an email from Myers during the workday, which prompted an email that evening stating that "this continued pattern of no communication [would] not be tolerated" [Doc. 33, ¶ 45]. Robertson had also been trying to adapt to Myers' preferred communication method using Google Chat to discuss issues before attempting to resolve them [Doc. 33, ¶¶ 49–50]. Myers also noted that Robertson was "resistant" when Myers informed employees they needed to transition out of the old ambulatory surgical center to working in the hospitals [Doc. 33, ¶ 51]. Before Cerner's implementation, Cummins had driven every day to Lenoir City to change out tapes [Doc. 33, ¶ 39]. That job duty was no longer necessary afterwards, and Myers believed Cummins struggled to find enough work to do [Doc. 33, ¶¶ 39–40]. Although Cummins had been working 33 to 34 hours per week before, he was only working 27 hours after the switch to Cerner [Doc. 29-4, pgs. 8–9].

Myers was involved in at least one other personnel decision for Tennova. Larry Rupard

recalled that he had been interested in hiring a candidate as a deskside employee at Tennova's Cleveland, Tennessee hospital [Doc. 33, ¶ 82; Doc. 29-7, pg. 10]. According to Rupard, Myers told him, "don't hire that person. They are too old. And I have enough old people" [Doc. 29-7, pg. 11]. However, the Cleveland hospital was not part of "8515," and Myers did not consider that hospital's employees for the RIF [Doc. 33, ¶ 83]. Plaintiffs are unaware of any comments Myers has made about their own ages [Doc. 33, ¶¶ 77–79].

In February 2021, Myers sought help to conduct the RIF from Tennova's Market Human Resources ("HR") Director, who gave him a spreadsheet to use in evaluating employees [Doc. 33, ¶¶ 23–25]. Myers would score employees and select the lowest-scoring employees within their job groups for the RIF [Doc. 33, ¶ 26, 30; *see* Doc. 29-1, ¶¶ 15–16]. HR completed the scores for disciplinary actions and seniority, and Myers evaluated employees based on subjective criteria [Doc. 33, ¶¶ 33–34]. The subjective criteria were: "(1) Relevant job experience and training for targeted position; (2) overall job performance (per latest performance evaluation); (3) versatility/ability to perform other job duties when needed; (4) problem-solving ability; (5) interactive skills/cooperation with co-workers, supervisors and/or subordinates; (6) customer service; [and] (7) attendance/reliability" [Doc. 33, ¶ 33]. Plaintiffs were ultimately among those selected [Doc. 33, ¶ 64].

Before the RIF, Tennova hired three new deskside employees, [*see* Doc. 29-2, pg. 52]: Kevin Nguyen joined on May 17, 2021, and Timothy Cochran and Glenn Grimsley started July 12, 2021 [Doc. 29-1, pg. 10]. Grimsley was 24, Nguyen was 31, and Cochran was 57 [Doc. 33, ¶ 65]. All three scored higher than Sullivan overall on the RIF criteria, and Myers chose to retain them [Doc. 33, ¶ 54].

Myers and Tennova's Market HR Director informed Plaintiffs of their terminations on

3

October 1, 2021 [Doc. 33, ¶ 60]. This lawsuit followed.

## II.     LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must generally view the facts contained in the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "come forward with significant probative evidence showing that a genuine issue exists for trial." *McKinley v. Bowlen*, 8 F. App'x 488, 491 (6th Cir. 2001). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the nonmoving party based on the record. *Id*.

## III.    ANALYSIS

The ADEA prohibits an employer from "discharg[ing] . . . or otherwise discriminat[ing] against any individual . . . because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). To prevail on an age-discrimination claim, the plaintiff must show that age was the "'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). "A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citation omitted).

### A.    Direct Evidence

Plaintiffs argue Myers' statement during an unrelated personnel decision that he "ha[d] enough old people" is direct evidence he discriminated against Plaintiffs based on their age [Doc.

4

32, pg. 12; *see* Doc. 29-7, pg. 11]. Plaintiffs argue that although he was not referring to them when he made the statement, the statement "supports an inference" that Myers was biased when he conducted the RIF [Doc. 32, pg. 13]. But "[d]irect evidence is evidence that proves the existence of a fact *without requiring any inferences.*" *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (citations omitted) (emphasis added). Courts consider four factors in determining whether allegedly discriminatory remarks are direct evidence: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 527 (6th Cir. 2012) (quoting *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002)). No one factor is dispositive. *Id.* (citations omitted).

Initially, Plaintiffs argue there is a genuine dispute as to whether Myers made the statement at all, and if so, when [Doc. 32, pg. 13]. But even assuming favorably to Plaintiffs that he did, Plaintiffs point to no evidence that would establish the statement was "proximate in time" to the RIF. Plaintiffs rely on Rupard's testimony, [Doc. 32, pg. 13], but Rupard could not say specifically when the statement occurred, only that it preceded the RIF [Doc. 33, ¶ 85]. Myers' transfer to Tennessee occurred eleven months before the RIF, [*see* Doc. 33, ¶¶ 1, 64] so the statement could have occurred at any time during that period. Contrary to Plaintiffs' assertion, [*see* Doc. 32, pg. 13], a jury could not reasonably conclude the statement was close in time to the RIF when the only witness to the statement cannot remember when it occurred. Plaintiffs contend that even if the statement was not close in time to the RIF, it must have been close in time to Myers' scoring of the employees considered for the RIF, which Plaintiffs claim was ongoing in November 2020

5

[Doc. 32, pg. 13]. But Plaintiffs point to no evidence that Myers was scoring employees in November 2020. Tennova asserts the earliest evidence of Myers' scoring was in July 2021 [Doc. 34, pg. 5; *see* Doc. 29-2, pgs. 76–77]. Plaintiffs fail to show Myers' comments were close in time to the RIF.

Nonetheless, Plaintiffs contend Myers was a decisionmaker in the RIF, and his alleged statement concerned a personnel action [Doc. 32, pgs. 12–13]. But as Plaintiffs concede, he was not commenting on the employees involved in the RIF [Doc. 32, pg. 13]. Instead, he was explaining to Rupard why he should not hire a candidate to work in a different department from Plaintiffs' at Tennova's Cleveland, Tennessee hospital [Doc. 33, ¶¶ 82–83]. This isolated statement about an unrelated decision is insufficient to conclude without any further inferences that Myers selected Plaintiffs for the RIF because of their ages. It is not *direct* evidence of discrimination.

Plaintiffs rely on *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296 (11th Cir. 2008) [Doc. 32, pg. 12]. This out-of-circuit precedent is distinguishable. In *Van Voorhis*, a manager stated he "didn't want to hire an old pilot" and declined to interview any of the first round of candidates, including the plaintiff, all of whom were over forty. 512 F.3d at 1298. He eventually hired a less experienced forty-year-old. *Id.* at 1298–99. The manager's statement was direct evidence, the Eleventh Circuit held, because it showed "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Id.* at 1300. Here, unlike the statement in *Van Voorhis*, Myers' statement was not directed at the plaintiffs. It concerned a candidate for a position in a different department which was not subject to the RIF, [*see* Doc. 33, ¶¶ 82–83], so it was not "related to the decision-making process" at issue here. *Diebel*, 492 F. App'x at 527.

6

Plaintiffs also cite *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990 (6th Cir. 2009), [Doc. 32, pg. 13], but that case does not help them either. There, two months after declining to select the plaintiff for a new position within the company, one of the interviewers told the plaintiff the company "went with a younger person" and that they "were looking down the road [and] wanted longevity." 309 F. App'x at 992. During that conversation, the interviewer asked the plaintiff how much longer she had to work and stated she was a "baby boomer" and would be retiring soon. *Id.* The issue was not whether those statements were about the plaintiff or were close in time to the refusal to hire her; it was whether the statements were imputable to the company. *Id.* at 996. Here, Tennova does not contend it is not responsible for Myers' statements; the issue is whether his statements show without further inferences that he discriminated based on Plaintiffs' ages. Unlike the interviewer's remarks in *Wharton*, Myers' statements do not explain his reasoning for taking adverse actions against Plaintiffs. He was commenting on an unrelated hiring decision. The statements are not direct evidence.

In sum, because Plaintiffs lack direct evidence of age discrimination, they must proceed on circumstantial evidence.

**B.      Circumstantial Evidence**

When a plaintiff relies on circumstantial evidence in an age-discrimination case, the familiar *McDonnell Douglas* burden-shifting framework applies. *Geiger*, 579 F.3d at 622. Under that framework, the Plaintiff must first make out a prima facie case of discrimination. *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464 (6th Cir. 1990) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)). "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Id.* (quoting *Burdine*, 450 U.S. at 252–53) (internal quotation

7

marks omitted). The plaintiff must then show that the proffered reason was pretext for discrimination. *Id.* (quoting *Burdine*, 450 U.S. at 252–53). "At the pretext stage, the plaintiff's burden of production 'merges' with his ultimate burden of persuasion to show that age discrimination was the but-for cause of his termination." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)). The Court addresses these requirements in turn.

### 1. Plaintiffs' Prima Facie Case

In general, the prima facie case requires a showing that the Plaintiff: "(1) was a member of a protected class of persons (i.e., persons 40 years of age or over), (2) was discharged, (3) was qualified for the position held, and (4) was replaced by someone outside of the protected class." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citation omitted). Here, Tennova argues Plaintiffs cannot establish the fourth element [Doc. 30, pg. 17]. "If the termination arises as part of a work force reduction, [the Sixth Circuit] has modified the fourth element to require the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Geiger*, 579 F.3d at 623 (quoting *Brune & Ashing v. Basf Corp.*, 234 F.3d 1267, 2000 WL 1597908, at *3 (6th Cir.2000) (table)). Plaintiffs do not dispute that the terminations in this case occurred in the context of a workforce reduction [*See* Doc. 32, pg. 15]. Thus, Plaintiffs must satisfy the heightened standard applicable to workforce-reduction cases.

However, the plaintiff's prima facie burden is "not onerous[,]" and it "is not meant to stymie plaintiffs." *Willard*, 952 F.3d at 808 (quoting *Provenzano*, 663 F.3d at 813 and *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)) (internal quotation marks omitted). Its purpose is "to raise a rebuttable presumption of discrimination by 'eliminat[ing] the most

8

Case 3:22-cv-00392-DCLC-JEM   Document 56   Filed 05/07/24   Page 8 of 17   PageID #: 885

common nondiscriminatory reasons for the [employer's treatment of the plaintiff][.]'" *Id.* (quoting *Cline*, 206 F.3d at 660). Thus, the plaintiff's evidence at this stage will be sufficient if it "raise[s] some suspicion as to [the employer]'s motives . . . ." *Rowan*, 360 F.3d at 548. More specifically, in reduction-in-force cases, "the purpose of the additional evidence requirement is to ensure . . . that the plaintiff has presented evidence to show that there is a *chance* the reduction in force is not the reason for the termination." *Johnson v. Franklin Farmers Co-op.*, 378 F. App'x 505, 509–10 (6th Cir. 2010) (emphasis added) (quoting *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006)). "For example, a plaintiff could establish a prima facie case by showing . . . that the employer made statements indicative of a discriminatory motive . . . ." *Barnes*, 896 F.2d at 1466 (citation omitted).

Here, though Myers' statement referred to the decision not to hire a candidate in a different department, his statement that he had "enough old people" is circumstantial evidence that he considered employees' ages when making personnel decisions. Tennova argues Plaintiffs cannot show it singled them out based on their ages [Doc. 34, pg. 6]. But to establish Plaintiffs' prima facie case, it is enough that their evidence raises "suspicion" that age was the cause of their terminations. *Rowan*, 360 F.3d at 548. Myers' "enough old people" comment is at least "indicative" of age discrimination, so it is sufficient to withstand summary judgment on Plaintiffs' prima facie case.

  **2. Legitimate Non-Discriminatory Reason**

Based on Plaintiffs' prima facie showing, the burden shifts to Tennova to articulate a legitimate, non-discriminatory reason for Plaintiffs' terminations. *See Barnes*, 896 F.2d at 1464 (citation omitted). Tennova asserts its reason was the elimination of Plaintiffs' positions—in other words, the RIF [Doc. 30, pg. 22; *see id.*, pg. 1]. Tennova selected employees for the RIF by scoring them along various criteria and terminating the lowest-scoring employees within their work group

[Doc. 33, ¶ 26, 30]. Those criteria were: "(1) Relevant job experience and training for targeted position; (2) overall job performance (per latest performance evaluation); (3) versatility/ability to perform other job duties when needed; (4) problem-solving ability; (5) interactive skills/cooperation with co-workers, supervisors and/or subordinates; (6) customer service; [and] (7) attendance/reliability" [Doc. 33, ¶ 33]. Tennova asserts each of the Plaintiffs were among the lowest scorers in their job groups [Doc. 33, ¶¶ 38, 42, 55]. Tennova satisfies its burden of articulating a legitimate, non-discriminatory reason. *See Shah v. NXP Semiconductors USA, Inc.*, 507 F. App'x 483, 492 (6th Cir. 2012) ("Evidence of an employer's business restructuring, which may include the elimination of jobs . . . satisfies the employer's burden of producing a legitimate, non-discriminatory reason for a plaintiff's termination.") (citation omitted).

### 3. Pretext

Because Tennova has articulated legitimate non-discriminatory reasons, the burden shifts back to Plaintiffs to show those reasons are pretext, and that their ages were the but-for cause of their terminations. "To establish pretext, a plaintiff may show that the defendant's reason '(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003)).

Plaintiffs opt for the second route. They assert Tennova's proffered reason did not actually motivate their terminations [Doc. 32, pg. 18]. To succeed on this theory, "the plaintiff must demonstrate that a reasonable jury could find that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup, and did not actually motivate its action." *McDaniels v. Plymouth-Canton Cmty. Sch.*, 755 F. App'x 461, 471–72 (6th Cir. 2018) (quoting *Manzer v. Diamond Shamrock Chemicals Co.*,

29 F.3d 1078, 1084 (6th Cir. 1994)) (internal quotation marks omitted).

Plaintiffs attempt to show pretext by disputing Tennova's asserted reasons for selecting each of them for the RIF [Doc. 32, pgs. 18–20]. Plaintiffs also point to evidence purporting to show Myers in fact discriminated based on their ages [Doc. 32, pg. 20]. The Court first examines the evidence which applies to all Plaintiffs before turning to the arguments as to each Plaintiff individually.

> i. *All Plaintiffs*

Plaintiffs first point to Myers' statements [Doc. 32, pg. 20; *see* Doc. 29-7, pg. 11]. "Age-related comments referring directly to the worker may support an inference of age discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (citation omitted). But in general, "[s]tatements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Geiger*, 579 F.3d at 621 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). True, "the absence of a direct nexus does not necessarily render a discriminatory remark irrelevant." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 355 (6th Cir. 1998). But "isolated and ambiguous comments" do not suffice to show discrimination. *Id.* (quoting *Phelps*, 986 F.2d at 1025).

Here, Plaintiffs are unaware of any comments Myers made about their own ages [*See* Doc. 33, ¶¶ 77–79]. His statements regarding the decision not to hire an employee in a different department were not a part of the "decisional process" that led to Plaintiffs' termination in the RIF. Further, the statements were isolated. Plaintiffs point to no other evidence of Myers making comments about employees' ages. These isolated comments unrelated to Plaintiffs' discharge fail to satisfy Plaintiffs' summary judgment burden.

11

Case 3:22-cv-00392-DCLC-JEM   Document 56   Filed 05/07/24   Page 11 of 17   PageID #: 888

Plaintiffs also argue that Myers had "limited" personal interaction with them on which to base their evaluations [Doc. 32, pg. 20]. But Myers stated he had worked with Sullivan between five and ten times, Cummins around five times, and Robertson face-to-face less than five times with ten or more phone calls [Doc. 29-2, pgs. 16–18]. Plaintiffs do not explain how that amount of interaction was insufficient to evaluate them for the RIF.

Plaintiffs highlight that Myers assessed employees using subjective criteria [Doc. 32, pgs. 16, 20; *see* Doc. 33, ¶ 32]. To be sure, subjective criteria "deserve careful scrutiny" because they "sometimes make it difficult to distinguish between lawful and unlawful employment actions . . . ." *Beck v. Buckeye Pipeline Servs. Co.*, 501 F. App'x 447, 450 (6th Cir. 2012) (quoting *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 93 (6th Cir. 1982)) (internal alterations and quotation marks omitted). "But flexibility in determining individual components of a matrix score does not indicate discrimination." *Id.* (quoting *Browning v. Dep't of the Army*, 436 F.3d 692, 697 (6th Cir.2006)) (internal quotation marks omitted). Here, Plaintiffs point to no evidence Myers applied the criteria in discriminatory fashion.

Plaintiffs also note that every employee terminated during the RIF was over 40, and they argue that shows pretext [Doc. 32, pg. 20]. The Sixth Circuit rejected a similar argument in *Thompson*. There, the employee contended all workers laid off during a RIF were over 40 and that the average age of those considered for layoffs was greater than the average age of retained workers. 985 F.3d at 526. The Sixth Circuit held the plaintiff had not established a prima facie case of age discrimination because no analysis accompanied the statistics. *Id.* at 527. The court explained that the sample size of five terminated employees in that case was too small to draw significant conclusions. *Id.*; *see also Peeples v. City of Detroit*, 891 F.3d 622, 635 (6th Cir. 2018) (sample size of 27 too small).

12

Here, other than noting that all the terminated employees were over 40, Plaintiffs' argument omits any statistics, let alone analysis. And, like the laid off employees in *Thompson*, the terminated employees here are too few to draw strong conclusions simply from raw numbers. Out of all the employees in "8515," fourteen were terminated in the RIF [*See* Doc. 33, ¶ 64]. Plaintiffs do not explain how the numbers alone could lead a jury to conclude that Plaintiffs' terminations were the result of discrimination.

    ii.    *Cummins*

The Court next examines the individual Plaintiffs' arguments. Tennova argues, and Cummins does not dispute, that he was one of the three lowest scoring help-desk analysts, all of whom Tennova selected for the RIF [Doc. 30, pg. 18; *see* Doc. 33, ¶ 37]. Tennova asserts the transition to the US domain and Cerner eliminated the need for Cummins to perform one of his daily job duties driving to Lenoir City to change out tapes [Doc. 30, pg. 19]. Cummins does not dispute that Tennova eliminated that job duty, [*see* Doc. 33, ¶ 39], but he argues Tennova points to no evidence that Myers relied on that fact when scoring him [Doc. 32, pg. 19]. But Myers verified Tennova's interrogatory response where it stated Cummins was failing to meet its legitimate expectations because he was struggling to find enough work to do after it eliminated his tape-changing duties [Doc. 32-9, pgs. 12–13]. Cummins asserts there is no evidence he struggled to find work, but he acknowledges he was working seven fewer hours each week after the change [Doc. 33, ¶ 40].

Employees' "subjective views" that they are "more qualified or productive . . . in relation to other coworkers, without more, are insufficient to establish discrimination." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010) (citation omitted). Here, Cummins offers no evidence to rebut Myers' assessment of his performance and reduced

13

productivity. Tennova eliminated one of his daily job duties, and his productivity suffered. He fails to show the RIF was pretextual.

   *iii.*  *Robertson*

Tennova argues it selected Robertson for the RIF because she scored the lowest of its network admins [Doc. 30, pg. 19]. Robertson does not dispute that she received the lowest score [Doc. 33, ¶ 41]. Tennova contends Robertson scored low in areas of "relevant job experience and training," "versatility/ability to perform other duties," "interactive skills/cooperation," and "customer service" [Doc. 33, ¶ 43; *see* Doc. 29-1, ¶ 26, pg. 10]. Robertson admits Myers gave her scores of 20 in each of those areas [Doc. 33, ¶ 43]. With only one exception, that score was the lowest any employee received in each of these domains [*See* Doc. 29-1, pg. 10].[1]

In Myers' assessment, Robertson's communication skills were poor. At one point, Myers sent Robertson an email forwarding a report indicating that seven of Tennova's server back-ups were failing [Doc. 33, ¶ 44]. When the email went unanswered for the rest of the day, Myers sent her another email stating that the "continued pattern of no communication [would] not be tolerated" [Doc. 33, ¶ 45]. Robertson did not respond until the next morning, when she apologized for "missing the backup report" [Doc. 33, ¶ 46]. She also struggled to adapt to Google Chat, Myers' preferred medium for communicating issues before employees sought to fix them [Doc. 33, ¶ 50]. She explained she "ha[d] a problem when [she was] working on five applications" and claimed "you can't constantly watch Google Chat. You just can't" [Doc. 29-5, pg. 16]. Robertson asserts she was not required to address the failing server back-ups because she and others were in the process of taking those servers offline [Doc. 32, pg. 19; Doc. 33, ¶ 44; Doc. 29-5, pg. 13]. She

---

[1]  The only score lower than a 20 was a 5, which employee Larry Hickens received in "Relevant job experience and training" [*See* Doc. 29-1, pg. 10]. Hickens also lost his job in the RIF [*See id.*; Doc. 33, ¶ 64].

14

disputes being "reluctant" to use Google Chat [Doc. 33, ¶ 49]. But she points to no evidence to dispute Myers' assessment that she struggled with "interactive skills" and "cooperation."

Myers also observed that Robertson was more resistant than others when told that she needed to move back to working in the hospitals instead of the old ambulatory surgical center [Doc. 33, ¶ 51]. Robertson claims she never disobeyed "any directives or orders on the matter" [Doc. 33, ¶ 51], but she fails to address Myers' assessment that she lacked "cooperation" and "versatility." Nor does she offer evidence to rebut his assessment of her "relevant job experience and training" and her "customer service" ability. She fails to show his negative assessment of her performance was pretextual.

   *iv.* *Sullivan*

Tennova contends it selected Sullivan for the RIF because he had the second lowest score of the deskside employees and scored low in "relevant job experience and training," "versatility/ability to perform other duties," and "problem-solving ability" [Doc. 30, pg. 21]. Myers recalled an incident where the director of surgery at North Knoxville told him she could not perform surgery that day because Sullivan had been unable to resolve a technical problem [Doc. 29-2, pg. 48]. Sullivan does not dispute that this incident occurred [Doc. 33, ¶ 59]. Myers judged that Sullivan struggled with the transition to Cerner and with providing the support Tennova needed him to provide as a deskside employee [Doc. 33, ¶ 57]. Moreover, in Myers' assessment, Sullivan struggled to understand and support the new UniPrint platform [Doc. 33, ¶ 58]. Sullivan offers no evidence to the contrary.

Sullivan contends that Myers had not interacted with him enough to determine that he struggled to transition to Cerner [Doc. 33, ¶ 57]. But Myers had worked with Sullivan between five and ten times [Doc. 29-2, pg. 17]. Sullivan fails to explain why that was insufficient. Again,

an employee's subjective disagreement with a supervisor's performance assessment is not enough on its own to show discrimination. *See Schoonmaker*, 595 F.3d at 269. Sullivan further argues Tennova did not claim that his struggles with these systems were the reason for his discharge, [Doc. 32, pgs. 19–20], but he does not dispute that Myers scored him low on "problem solving ability" [Doc. 33, ¶ 56].

Sullivan contends Tennova's addition of three new deskside employees a few months before the RIF, two of whom were under 40, supports an inference of pretext [Doc. 32, pg. 20]. "However, the retention of an employee younger than a competent plaintiff is insufficient to establish a prima facie case of age discrimination in the RIF context." *Thompson*, 985 F.3d at 527 (citing *Schoonmaker*, 595 F.3d at 267). In *Thompson*, the Sixth Circuit explained that the plaintiff failed to produce evidence of discriminatory statements or that the younger employee was less qualified. 985 F.3d at 527. Here, as explained, Myers' statements were unrelated to the RIF and too isolated to support an inference of discrimination. And Sullivan fails to explain why the employees Tennova retained were less qualified than he was. He fails to show pretext based on Tennova's decision to hire them.

In sum, Plaintiffs fail to show that Tennova's asserted reasons for discharging them—the RIF and evaluation criteria—were pretext for age discrimination. Accordingly, Tennova is entitled to summary judgment on Plaintiffs' ADEA claim.[2]

## IV.   CONCLUSION

For the reasons stated herein, Tennova's Motion for Summary Judgment [Doc. 29] is **GRANTED**. The Complaint [Doc. 1] is **DISMISSED WITH PREJUDICE**.

---

[2]   Because Plaintiffs' age discrimination claim fails under the *McDonnell Douglas* framework, the Court need not address Tennova's argument that Cummins' acceptance of a severance agreement bars his claim [*See* Doc. 30, pgs. 24–25].

A separate judgment shall enter.

**SO ORDERED**:

s/ Clifton L. Corker<br>
United States District Judge