## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: January 22, 2025

Mr. Clint J. Coleman
East Tennessee Employment Law
10263 Kingston Pike
Knoxville, TN 37922

Ms. Katherine Elizabeth Griffin
Mr. Joshua Douglas Kleppin
Mr. John Patrick Rodgers
Bradley Arant Boult Cummings
1221 Broadway, Suite 2400
Nashville, TN 37203

      Re: Case No. 24-5531, *David Sullivan, et al v. Metro Knoxville HMA, LLC*
        Originating Case No. : 3:22-cv-00392

Dear Counsel,

 The Court issued the enclosed opinion today in this case.

 Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

              Sincerely yours,

              s/Cathryn Lovely
              Opinions Deputy

cc: Ms. LeAnna Wilson

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0027n.06

Case No. 24-5531

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| DAVID SULLIVAN et al., | ) | |
| Plaintiffs-Appellants, | ) ) | FILED<br>Jan 22, 2025<br>KELLY L. STEPHENS, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| METRO KNOXVILLE HMA, LLC, dba Tennova Healthcare, | ) ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges.

THAPAR, Circuit Judge. Plaintiffs sued their former employer, Metro Knoxville HMA, LLC ("Tennova"), after it fired them as part of a reduction in force. They alleged that Tennova discriminated against them because of their age, in violation of the Age Discrimination in Employment Act ("ADEA"). *See* 29 U.S.C. § 623(a)(1). The court below granted summary judgment to Tennova. We agree and affirm.

I.

Community Health Systems, Inc., a nationwide provider of general hospital and other healthcare services, bought Tennova Healthcare, another healthcare provider that owned a chain of hospitals. After the purchase, Community Health updated the IT systems for five Tennova hospitals in East Tennessee. Community Health wanted to switch the hospitals to a new IT platform that would allow Tennova's IT department to benefit from Community Health's

resources and reduce the need for local support in Tennessee. Thus, Community Health also planned to reduce its workforce within Tennova's Tennessee-based IT department.

Tennova's Tennessee-based IT employees were part of a group called "8515." The three plaintiffs here belonged to this group. At the time, Charles Cummins, 68, was a help desk analyst. David Sullivan, 68, was a systems analyst. And Darlene Robertson, 69, was a lead network administrator.

To implement the technology changes and conduct the reduction in force, Community Health sent Kevin Myers to East Tennessee to take over as senior IT director. As part of his role, Myers both interacted with and observed Tennova's employees.

Myers says he saw several employees struggle with the new system. For example, Myers recalls that one of Tennova's hospitals was unable to perform surgeries one day because Sullivan couldn't fix a technical issue. Myers also observed that Sullivan struggled with the transition to the new technology. As for Cummins, Myers observed that the switch to the new IT platform eliminated one of Cummins' primary job duties. And Myers once asked Robertson about failing back-up systems, and she did not respond for several hours. Myers informed her that "this continued pattern of no communication [would] not be tolerated." R. 29-5, Pg. ID 338, 376.

After Myers had been on the job for almost a year, Tennova instructed him to evaluate employees for the reduction in force. Myers rated the employees across a series of metrics and designated the lowest-scoring personnel for the reduction in force. Plaintiffs did not rank highly in their evaluations, either within their positions or among all employees. Sullivan ranked near the bottom of all employees, while Robertson tied for last. They were subsequently laid off.

Following their termination, plaintiffs sued for age discrimination. The district court granted summary judgment to Tennova. Plaintiffs appeal that determination here.

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

A.

We review the district court's grant of summary judgment de novo. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

1.

The ADEA prohibits an employer from discriminating against an employee "because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a violation through direct or circumstantial evidence of age-based discrimination. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Where, as here, the plaintiffs offer only circumstantial evidence of discrimination, we proceed under the *McDonnell Douglas* burden-shifting framework. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

We walk through three steps when applying *McDonnell Douglas*. First, the plaintiff must make a prima facie showing of age discrimination. *Id.* Then, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (citation omitted). Finally, "[i]f the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." *Id.* (citation omitted).

i.

We need not run through the entire burden-shifting framework here. Assuming plaintiffs can make a prima facie case, Tennova offered a legitimate reason for the firings: carrying out the desired reduction in force within the IT department. In response, plaintiffs claim the reduction was merely pretext for age discrimination.

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

To prove the defendant's response is pretextual, a plaintiff may show "that the defendant's reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (citation omitted).

Plaintiffs choose the second option. So, they must show that there is enough circumstantial evidence of discrimination in the record to create a genuine factual dispute over whether Tennova's explanation is really a pretext for illegal age discrimination. *See Kirkland v. City of Maryville*, 54 F.4th 901, 911 (6th Cir. 2022) (citation omitted). Plaintiffs can't meet that burden.

Plaintiffs offer evidence of discrimination relating to each of them individually and to all of them collectively. We address each in turn.

*Sullivan*. There's no evidence that the reduction in force was a pretext to fire Sullivan. Plaintiffs don't dispute that Sullivan had the second-lowest score of the deskside employees in Myers' evaluation. Why did Sullivan score so low? Myers testified that the director of surgery at the North Knoxville hospital had told him that the hospital couldn't perform surgeries one day because the systems were down, and Sullivan couldn't fix them. Myers also explained that Sullivan "struggled with the transition" to the new IT system and lacked an understanding of Tennova's printing platform. R. 29-2, Pg. ID 198–99.

Plaintiffs claim that Tennova failed to explain how these deficiencies "were the reasons Sullivan was" fired. Appellants Br. at 40. But Myers explained that these interactions gave rise to Sullivan's poor scores in the "versatility and problem-solving ability categories." R. 29-2, Pg. ID 198. That's a nondiscriminatory reason for firing him.

Plaintiffs also argue that Tennova hired a younger, less-experienced employee, Glenn Grimsley, a few months before firing Sullivan. But, unlike Sullivan, Grimsley worked at a

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

different medical center and was "a tech on the floor that did blood pressures," "vital signs," and the like. *Id.* at Pg. ID 181. Myers was specifically looking to hire someone who knew well the particular facility Grimsley came from; he hired Grimsley based, in part, on his experience at that facility and a recommendation from the Chief Nursing Officer there. And Grimsley didn't even replace Sullivan; a fifty-seven-year-old named Timothy Cochran did. That Tennova hired a younger employee performing a different job at a different hospital isn't probative of age discrimination against Sullivan. And both Grimsley and Cochran scored higher than Sullivan on Myers' evaluation.

*Cummins*. As a preliminary matter, Cummins waived his ADEA claim by entering into a severance agreement with Tennova and failing to timely revoke it. The ADEA gives employees seven days to revoke that agreement, and Cummins' severance agreement included this provision. *See* R. 29-4, Pg. ID 317; *see also* 29 U.S.C. § 626(f)(1)(G). Cummins signed the agreement on October 1, 2021. But he waited until October 20, 2021, to notify Tennova that he revoked the severance package. That's outside the seven-day window and thus a waiver of an ADEA claim.

But even if we reach the merits, there's no evidence that the reduction in force was a pretext to fire Cummins. Cummins did not rank highly among the help desk analysts, and among all employees he ranked 23rd out of 35, around the bottom third. And help-desk analysts below him were also laid off. Myers further explained that, because of the efficiencies created by the new IT system, Cummins' "primary function," changing out tapes at the Lenoir City Data Center, "was completely eliminated." R. 29-2, Pg. ID 163; R. 32-9, Pg. ID 547; R. 32-11, Pg. ID 592. Thus, Cummins "struggled to find an adequate amount of work." R. 32-9, Pg. ID 547–48. Myers also reported that Cummins "exhibited poor performance skills related to answering customer phone calls." *Id.* at Pg. ID 548.

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

*Robertson.* Finally, Robertson hasn't presented a genuine issue of material fact about the reasons behind her termination. Robertson doesn't dispute that she had the lowest score in her evaluation group or that she tied for the lowest score among all employees. And Myers provided sufficient justification for this score. Once, when several of Tennova's backup servers were failing, says Myers, Robertson failed to respond for several hours. Myers emailed Robertson, "I am writing to let you know that this continued pattern of no communication will not be tolerated. We have discussed this in person many times and I am copying HR so that you understand the importance of the basic expectation of communication." R. 33, Pg. ID 753. Myers also found Robertson "reluctant[]" to use his preferred method of communication, Google Chat, and found her "more resistant than others" about moving back to the hospitals after working in the ambulatory surgery center. *Id.* at Pg. ID 755–56. These negative assessments explain Robertson's low performance scores.

Robertson disputes some of these facts; she states that the servers in question were not in service because they were being taken offline. She also states that Myers was the one who communicated poorly and gives examples of his purportedly poor communications with her and other employees. But whether Robertson agreed with Myers' rationale for the scoring decision is "irrelevant to the age-discrimination inquiry—what matters is [Myers'] perception of [Robertson's] qualifications." *Browning v. Dep't of the Army*, 436 F.3d 692, 698 (6th Cir. 2006). And even viewing the facts in her favor, Robertson has presented no evidence that the low scores she received were a pretext for age discrimination.

ii.

The evidence relating to all the plaintiffs also doesn't raise an inference of discrimination.

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

The most compelling evidence of discrimination is that Myers allegedly told another staff member, Larry Dean Rupard, "[D]on't hire that person. They are too old. And I have enough old people." R. 29-7, Pg. ID 420. Notably, the statement dealt with Community Health's Cleveland hospital, which was not the site of any employment matters at issue here. And Rupard could not remember when Myers made this statement. Myers joined Tennova eleven months before plaintiffs' firing, so Myers could have said that months before he carried out the reduction in force. Rupard also could not remember what hiring decision Myers was discussing, nor did Rupard report this comment to anyone at the time. He also was unaware of "any other ageist comments allegedly made by Kevin Myers." R. 32-13, Pg. ID 688.

While Myers' statement—assuming he made it—may provide some evidence that he may harbor animus towards the elderly, this isolated comment can't singlehandedly establish pretext. This court has held that a prima facie case of intentional discrimination can't "be based on vague, ambiguous, or isolated remarks." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000). If "isolated" remarks can't make out a prima facie case, then they can't establish pretext either. And plaintiffs mention no other comments from Myers relating to an employee's age—let alone plaintiffs' ages. Indeed, this case looks a lot like *Trapp v. TSS Techs., Inc.*, 485 F. App'x 757 (6th Cir. 2012). There, we found that a supervisor's "isolated remark" about another employee as "old and inflexible" was "insufficient" to show pretext. *Id.* at 761. So too here. A single comment that's unrelated to plaintiffs and the disputed firing process doesn't show that Myers engaged in age discrimination.

Plaintiffs, for their part, cite *Ercegovich v. Goodyear Tire & Rubber Co.* for the proposition that evidence of "a discriminatory atmosphere . . . may serve as circumstantial evidence of individualized discrimination." Appellants Br. at 33 (quoting 154 F.3d 344, 356 (6th Cir. 1998)).

- 7 -

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

But the plaintiff in *Ercegovich* relied on "numerous age-biased statements allegedly made by several individuals occupying high positions" in the defendant company. 154 F.3d at 354. Indeed, the repeated remarks "buttress[ed] one another" to support an inference of discrimination. *Id.* at 356. Here, by contrast, plaintiffs cite one comment by one person about a different hospital made at an unknown time. This isolated remark doesn't "buttress" an inference of discrimination in the same way that the numerous remarks in *Ercegovich* did.

Further, *Ercegovich* itself acknowledges that the "nexus between the allegedly discriminatory remarks and the challenged employment action affects the remark's probative value." *Id.* at 355. But here, the nexus is tenuous at best. Rupard can't remember when the comment was made. More importantly, from what Rupard does recall, Myer's alleged statement concerned an unrelated hiring decision at a different hospital. Given the minimal connection to the plaintiffs' discharge, Myers' remark is of little probative value in inferring discrimination.

Next, plaintiffs take issue with the criteria Myers used to evaluate them. They allege that the subjective criteria Myers used in performance evaluations, combined with his limited interactions with the employees, provide circumstantial evidence of age discrimination.[1] But there are several problems with this logic.

First, Myers' reliance on subjective evaluation criteria, "without more, does not establish pretext." *Browning*, 436 F.3d at 697. All employees were subject to this rubric, and plaintiffs don't allege that any of the criteria were themselves discriminatory. To be sure, subjective criteria "sometimes make it difficult to distinguish between lawful and unlawful employment actions, and

---

[1] The evaluation criteria were: (1) "Relevant job experience and training for targeted position"; (2) "Overall job performance (per latest performance evaluation)"; (3) "Versatility/ability to perform other duties when needed"; (4) "Problem-solving ability"; (5) "Interactive skills/cooperation with co-workers, supervisors and/or subordinates"; (6) "Customer service"; and (7) "Attendance/reliability." R. 29-1, Pg. ID 151.

- 8 -

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

they deserve careful scrutiny." *Beck v. Buckeye Pipeline Servs. Co.*, 501 F. App'x 447, 450 (6th Cir. 2012) (cleaned up). But plaintiffs "never assert[] a link between the subjective . . . criteria and any discriminatory intent." *Browning*, 436 F.3d at 697. Conclusory allegations don't create that missing link.

And, while plaintiffs assert that Myers' limited personal interactions with them made the subjective criteria ripe for abuse, they have no evidence that Myers had more interactions with the employees he retained. In fact, plaintiffs themselves point out that "Myers had limited experience and personal interaction with [plaintiffs] *and many of the other employees listed*." Appellants Br. at 37 (emphasis added). So, plaintiffs can't cite Myers' limited interactions with them to show that they were treated differently and their low scores were a pretext for age discrimination. Plaintiffs may fault Myers for using subjective criteria based on insufficient interactions. But that's a quibble with Tennova's evaluation process and the rubric it gave Myers. The ADEA does not protect employees from employers' allegedly poor decision-making when the decision is based on a legitimate, nondiscriminatory rationale.

Plaintiffs further emphasize that every fired employee was over 40. But Tennova didn't fire every worker above 40. For instance, Tennova kept on four workers over 60, while firing seven employees in their 40s and 50s. That counsels against a trend of firing older workers. Plaintiffs respond by calculating that only 77% of the retained employees in the IT department were over 40, down from 86% before the reduction in force. But a 36-person unit is too small a sample size to generate a statistically significant difference. *See Peeples v. City of Detroit*, 891 F.3d 622, 635 (6th Cir. 2018) (finding a statistical analysis of a sample size of 27 "insufficient" to show prima facie evidence of discrimination). What's more, under plaintiffs' logic, the ADEA

- 9 -

No. 24-5531, *Sullivan v. Metro Knoxville HMA, LLC*

would all but require equal proportions of employees over 40 before and after a reduction in force. That's not the law.

*   *   *

Altogether, plaintiffs' evidence fails to show that the reduction in force was a pretext for illicit age discrimination. We therefore affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5531

DAVID SULLIVAN, DARLENE ROBERTSON, and CHARLES CUMMINS, individually and on behalf of others similarly situated,

    Plaintiffs - Appellants,

v.

METRO KNOXVILLE HMA, LLC, dba Tennova Healthcare,

    Defendant - Appellee.

**FILED**
Jan 22, 2025
KELLY L. STEPHENS, Clerk

Before: THAPAR, NALBANDIAN, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk